**VERNON BEIGAY, INC., d/b/a Video Zone, Appellant,**

v.

**William B. TRAXLER, Jr., individually and as Solicitor for the Thirteenth Judicial Circuit, ex rel.; Johnny Mack Brown, individually and as Sheriff of Greenville County, South Carolina and ex rel.; Greenville County, South Carolina; Travis M. Medlock, Jr., individually and as South Carolina Attorney General and ex rel. State of South Carolina and State of South Carolina, Appellees.**

No. 85–1592.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 6, 1986.

Decided April 28, 1986.

Robert Eugene Smith (Kim Varner, Varner & McClain, Greenville, S.C., on brief), for appellant.

Harvey G. Sanders, Jr. (Leatherwood, Walker, Todd & Mann, Greenville, S.C., on brief), William E. Salter, III (David C. Eckstrom; Office of Atty. Gen. for the State of S.C., Columbia, S.C., on brief), for appellees.

Before RUSSELL and ERVIN, Circuit Judges, and MERHIGE, District Judge for the Eastern District of Virginia, sitting by designation.

ERVIN, Circuit Judge:

Vernon Beigay, Inc. (Beigay) brought this action challenging the constitutionality of South Carolina's obscenity statutes, S.C. Code Ann. §§ 16–15–260 to –440 (Law.Co-op.1985). Beigay sought injunctive relief against the enforcement of these statutes. Beigay further sought damages under 42 U.S.C. § 1983 (1982) for the appellees' enforcement actions, which allegedly chilled and violated Beigay's U.S. Constitutional rights guaranteed under the first and fourteenth amendments. The district court rejected Beigay's constitutional challenge and relief requests, granting summary judgment in appellees' favor. We reverse in part and affirm in part.

## I.  FACTS

The Greenville County Sheriff's Department received several complaints that business establishments throughout the county were engaged in the sale of video tape cassettes believed to contain sexually-oriented material in violation of the South Carolina obscenity statutes. Representatives of the Greenville County Sheriff's Department obtained copies of several such cassettes which they delivered to the Solicitor for the Thirteenth Judicial Circuit for a determination of whether sufficient cause existed to commence prosecution under the obscenity statutes.

As a result of his investigation, appellee Traxler, then Solicitor for the Thirteenth Judicial Circuit, determined that the video tape cassettes contained material violative of the obscenity statutes. As a consequence of that determination, the Green-ville County Sheriff's Department compiled a list of business establishments believed to be engaged in the sale or distribution of video tape cassettes which might contain obscene material. Officers from the department made personal calls upon each such business establishment to provide notice that the distribution of obscene material is unlawful and to request the cooperation of the businesses by discontinuing the sale or distribution of video tape cassettes containing obscene material.

On March 28, 1985, Officer M.L. Wheeler of the Greenville County Sheriff's Department made several calls on business establishments located in Greenville County, including the Video Zone operated by Beigay, and informed operators of such establishments of the complaints received and the unlawfulness of distributing obscene materials. Beigay was requested to discontinue the sale or distribution of obscene materials and warned that if such activities continued after a reasonable period of time, offending parties would be subject to prosecution. No arrests were made. Nor were any video tape cassettes or other materials confiscated or seized.

## II.  STANDING

Before addressing the merits of this appeal, we note that Beigay's standing to challenge the constitutionality of South Carolina's obscenity statutes and to assert a section 1983 claim is questionable. No criminal charges have been made against Beigay or its employees; no films or other materials have been seized by law enforcement authorities, and no action has been taken to close or impair Beigay's lawful business activities. Beigay has simply been cautioned by an officer of the Sheriff's Department to obey the law or risk being prosecuted.

In order to invoke this court's jurisdiction over Beigay's constitutional challenge, a case or controversy must exist. U.S. Const. art. III, § 2. The only possible case or controversy arises from Officer Wheeler's warning to Beigay that offenders of the South Carolina obscenity statutes

would be prosecuted. We realize that a "threat of prosecution" under a statute may be sufficient to present a case or controversy. *See Doe v. Duling*, 782 F.2d 1202, 1205 (4th Cir.1986). Beigay, however,

> must show more than the fact that state officials stand ready to perform their general duty to enforce laws, *Poe v. Ullman*, 367 U.S. 497, 501 [81 S.Ct. 1752, 1754, 6 L.Ed.2d 989] (1961); *Watson v. Buck*, 313 U.S. 387, 399 [61 S.Ct. 962, 966, 85 L.Ed. 1416] (1941). Even past threats of prosecution may not be sufficient to establish a controversy susceptible of resolution in federal court. *See, e.g., Ellis*, 421 U.S. 426 [95 S.Ct. 1691, 44 L.Ed.2d 274]. In short, one must show a threat of prosecution that is both real and immediate, *Golden v. Zwickler*, 394 U.S. 103, 109–10 [89 S.Ct. 956, 960, 22 L.Ed.2d 113] (1969), before a federal court may examine the validity of a criminal statute.

*Id.* 782 F.2d at 1206. The record is less than ideal for Beigay to make this showing.

Beigay's standing to raise a section 1983 claim requires proof that Beigay has suffered a deprivation of a constitutional right by appellees acting under color of governmental policy. *See* 28 U.S.C. § 1343 (1982). We question whether appellees' conduct was sufficiently threatening to have had a "chilling effect" on Beigay's first amendment rights.

Although we are concerned by the little evidence showing that Beigay has indeed suffered an injury in fact, we will assume for purposes of this appeal that Beigay has standing to be before this court.[1]

## III. CONSTITUTIONAL CHALLENGE

Beigay challenges the constitutionality of the South Carolina obscenity statutes by claiming the statutes are void for vagueness and overbreadth.[2] We find no merit

---

**1.** As Judge Williams recognized in *American Booksellers Ass'n v. Strobel,* 617 F.Supp. 699, 703 (E.D.Va.1985):

> Where first amendment rights are at stake, case or controversy and standing requirements have been relaxed so that litigants may preserve rights of free expression. *See Secretary of State v. Munson,* [467] U.S. [947] [956] 104 S.Ct. 2839, [2847] 81 L.Ed.2d 786, 796 (1984) ("where there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged"); *see also Broadrick v. Oklahoma,* 413 U.S. 601, 611, 93 S.Ct. 2908, 2847, 37 L.Ed.2d 830 (1973) (challenge to statute restricting political activities of state civil servants permitted since the statute's existence may discourage persons not before the Court from engaging in protected speech). This relaxed stance reflects the treasured position occupied by the first amendment, and the consequent importance of having first amendment controversies adjudicated promptly.

**2.** The statutes provide in relevant part:

> § 16–15–260. Definitions.
> As used in §§ 16–15–270 through 16–15–440:
> (a) "Obscene or obscenity" means any work, material or performance which, taken as a whole, appeals to the prurient interest in sex, which portrays sexual conduct in a patently offensive way, and which, taken as a whole,

does not have serious literary, artistic, political, educational or scientific value. In order for any matter to be determined "obscene" the trier of fact must find:

> (1) that the average person, applying contemporary community standards would find that the matter taken as a whole, appeals to the prurient interest, and
> (2) that the matter depicts, or describes, in a patently offensive way, sexual conduct specifically defined by this Section or authoritatively construed by the courts of this State as being a portrayal of patently offensive sexual conduct as the phrase is used in the definition of obscene, and
> (3) that the matter taken as a whole, lacks serious literary, artistic, political, educational, or scientific value.
> (b) "Prurient Interest" means a shameful or morbid interest in nudity, sex or excretion and is reflective of an arousal of lewd and lascivious desires and thoughts.
> (c) "Patently Offensive" means obviously and clearly disagreeable, objectionable, repugnant, displeasing, distasteful, or obnoxious to contemporary standards of decency and propriety within the community.
> . . . .
> (g) "Knowingly" means having knowledge of the content of the subject material or performance, or failing after reasonable opportunity to exercise reasonable inspection which would have disclosed the character of such material or performance.
> . . . .

in Beigay's contentions, except for the overbreadth in sections 16–15–280(1) and (4) discussed *infra*. The South Carolina statutes, with those two exceptions, are grounded in language prescribed or approved in prior United States Supreme Court obscenity decisions.

## A. *Void for Vagueness Doctrine*

It is well settled that a state has the power to regulate the distribution of obscene materials, for obscenity is not protected by the first amendment. *See Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The regulations, however, must be in accordance with the Su-

preme Court's enunciated guidelines, which read:

> The basic guidelines for the trier of fact [in determining if materials are obscene] must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, ...; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 93 S.Ct. at 2615 (citations omitted). These guidelines are recited, almost verba-

---

(n) "Sexually oriented" means that the material or performance contains in whole or in part depictions, descriptions, or representations of nudity or sexual conduct and is considered harmful to minors.

. . . .

§ 16–15–270. Judicial determination of obscenity; procedure; warrants or orders of seizure; temporary restraining orders; contempt.

(a) The purpose of this section is to provide a judicial determination of the question of whether books, magazines, motion pictures or other materials are obscene prior to their seizure or prior to a criminal prosecution relating to such materials.

(b) The public policy of this State requires that all proceedings prescribed in this section shall be examined, heard and disposed of with the maximum promptness and dispatch commensurate with the Constitution of the United States and the Constitution of this State.

. . . .

(f) A circuit judge may issue, concurrently with warrants for search and seizure, a temporary restraining order prohibiting the owner or manager of the premises to be searched from removing, causing or permitting to be removed the material which is alleged to be obscene within the meaning of § 16–15–260; provided, however, that such temporary restraining order shall not be construed as prohibiting the owner or manager of the premises from conducting sales in the normal course of business.

. . . .

(h) Warrants or orders authorizing seizures of multiple copies of obscene material for the purpose of suppression may only issue after a trial court's determination of obscenity. Such warrants or orders may only be directed against material within the claimed ownership, possession, custody or control of a con-

victed defendant or agent or employee thereof.

. . . .

§ 16–15–280. Matters provable in prosecution.

In any prosecution for an offense involving dissemination of obscenity under §§ 16–15–310, 16–15–320, and 16–15–350 through 16–15–380, evidence shall be admissible to show:

(1) The character of the audience for which the material was designed or to which it was directed;

(2) Whether the material is published in such a manner that an unwilling person could not escape it;

(3) Whether the material is exploited so as to amount to pandering;

(4) What the predominant appeal of the material would be for ordinary adults or a special audience and what effect, if any, it would probably have on the behavior of such people;

(5) Literary, artistic, political, educational, scientific or other social value, if any, of the material;

(6) The degree of public acceptance of the material throughout the State;

(7) Appeal to prurient interest, or absence thereof, in advertising or in the promotion of the material.

. . . .

§ 16–15–390. Placing sexually oriented materials upon public display; failure to remove such display.

Any person who intentionally and knowingly places sexually oriented materials upon public displays, or who knowingly and intentionally fails to take prompt action to remove such a display from property in his possession after learning of its existence, shall be deemed guilty of a misdemeanor and shall be punished as provided in § 16–15–420.

tim, in the South Carolina statute. *See* S.C.Code Ann. § 16–15–260(a). Thus, Beigay's complaint that the South Carolina

> Legislature has simply failed to establish minimal guidelines to govern law enforcement officials as well as the triers of fact. Nor does the statute draw reasonably clear lines between that which is prohibited and that which is not

is without merit. (Brief for Appellant at 9–10).

The Supreme Court has explicitly stated that when the *Miller* prerequisites are used in a state's regulatory scheme, a dealer in obscene materials is provided with fair notice that his public and commercial activities may bring prosecution. *Miller*, 413 U.S. at 27, 93 S.Ct. at 2616.[3] The regulated materials need not be defined with "ultimate, god-like precision." *Id.* at 28, 93 S.Ct. at 2617.

■ Because we recognize that "unavoidable imprecision is not fatal and celestial precision is not necessary," *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 833 (4th Cir.1979), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980), we also reject Beigay's claim that because numerous words throughout the statutes are not defined, the statutes are void for vagueness. We find the words used in these statutes reasonably specific and precise under the requirements of *Miller*.[4] Moreover, "[a] fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common

meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). *Cf. Matala v. Consolidation Coal Co.*, 647 F.2d 427, 429 (4th Cir.1981). Applying such meaning to the challenged words herein, the statutes are not unconstitutionally vague.[5]

### B. *Overbreadth Doctrine*

■ Beigay attacks three specific statutes as being unconstitutionally overbroad. The first statute, section 16–15–260(b), defines prurient interest:

> "Prurient interest" means a shameful or morbid interest in nudity, sex or excretion and *is reflective of an arousal of lewd and lascivious desires and thoughts.*

S.C.Code Ann. § 16–15–260(b)(emphasis added).

Beigay argues that the emphasized language renders the statute unconstitutionally overbroad, since materials that should be protected by the Constitution will be considered obscene under this definition of prurient interest. Beigay reasons that the unemphasized language provides one definition of prurient interest, and the emphasized, another. Therefrom, Beigay concludes that, as "lewd" and "lascivious" desires are healthy, wholesome reactions protected by the first amendment, the statute prohibits constitutionally protected speech.

Beigay's argument is flawed in two aspects. The section defining prurient interest is a single definition, requiring both a

---

**3.** Indeed, this court has already rejected an unfair notice challenge to the South Carolina obscenity statutes. *See Olson v. Leeke*, 744 F.2d 1061 (4th Cir.1984), *cert. denied*, ⸺ U.S. ⸺, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985).

**4.** The Court stated:
  "Many decisions have recognized that these terms of obscenity statutes are not precise. [Footnote omitted.] This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. ' ... [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed con-

duct when measured by common understanding and practices....' 'That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense....' "
*Miller*, 413 U.S. at 27 n. 10, 93 S.Ct. at 2617 n. 10 (quoting *Roth v. United States*, 354 U.S. 476, 491–92, 77 S.Ct. 1304, 1312–13, 1 L.Ed.2d 1498 (1957) (Brennan, J.)).

**5.** Beigay has presented no reason why the undefined words' ordinary meanings should not be used or result in statutory vagueness.

morbid interest *and* reflection of arousal.[6] Thus, South Carolina's definition places a more stringent standard on the prosecution than required by the definition Beigay claims *Miller* mandates.[7] Accordingly, we can find no reason why the statute is unconstitutionally overbroad.

The second flaw in Beigay's argument is that "lewd" and "lascivious" desires or thoughts have not been construed by the Supreme Court as terms depicting "good old fashion healthy interest in sex." To the contrary, the Supreme Court has recognized these terms as proper definitions for "prurient interest." *See Roth v. United States,* 354 U.S. 476, 487 n. 20, 77 S.Ct. 1304, 1310 n. 20, 1 L.Ed.2d 1498 (1957).[8] Thus, the inclusion of "lewd" and "lascivious" in the definition of prurient interest does not make the statutes overbroad.

■ Beigay also asserts that sections 16–15–280(1) and (4) are overbroad because these sections allow the trier of fact, in deciding if material is obscene, to consider the material in the context in which it was used and the potential effects on the behavior of a group of people.[9] We agree with Beigay, that these sections exceed the *Miller* guidelines in distinguishing protected first amendment expression from that which is obscene, thereby potentially reaching a substantial amount of protected activity.

The *Miller* three-part test is a limitation beyond which neither legislatures nor juries may go. *Cf. Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), *Miller,* 413 U.S. at 24, 93 S.Ct. at 2615. *Miller* requires that the trier of fact evaluate how "the average person, applying contemporary standards" would find the material. Considering the character of the audience or the predominant appeal of the material to a select audience or the behavioral effect on those specific people directly encroaches upon the *Miller* guideline.[10] Moreover, these considerations permit the trier of fact in a South Carolina obscenity case to ignore the other two parts of the *Miller* test: (1) whether the work as a whole is patently offensive;[11] and (2) whether the material has some literary, artistic, political, or scientific value.[12]

---

**6.** Indeed, the South Carolina Supreme Court has rejected the argument advanced by Beigay that the definition of "prurient interest" in § 16–15–260(b) is unconstitutional because it includes the requirement that the matter also be "reflective of an arousal of lewd and lascivious desires and thoughts." *See State v. Barrett,* 278 S.C. 92, 292 S.E.2d 590, *cert. denied,* 551 U.S. 1021, 103 S.Ct. 388, 74 L.Ed.2d 518 (1982). In *Barrett,* the court held that "[c]ontrary to the argument of counsel, we think that this portion of the definition increases the burden of the government [from the minimal requirements of *Miller* ] before conviction may be had." *Id.* at 95, 292 S.E.2d at 592.

**7.** Beigay contends that *Miller* requires a definition of prurient interest as only "a shameful or morbid interest in nudity, sex or excretion."

**8.** The recent Supreme Court decision in *Brockett v. Spokane Arcades,* —— U.S. ——, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985), acknowledged that the *Roth* definition of prurient interest has not been rejected by the Court. The *Brockett* Court was asked, but refused to decide, if "lustful" desires or thoughts were constitutionally protected speech. *Id.* 105 S.Ct. at 2800.

**9.** These specific sections read:

In any prosecution for an offense involving dissemination of obscenity ..., evidence shall be admissible to show:

(1) The character of the audience for which the material was designed or to which it was directed;

....

(4) What the predominant appeal of the material would be for ordinary adults or a special audience and what effect, if any, it would probably have on the behavior of such people;

*S.C.Code Ann.* § 16–15–280(1) & (4).

**10.** The Supreme Court explicitly rejected a standard of obscenity that allowed material to be judged merely by its effect on a particular group. *Roth,* 354 U.S. at 488–89, 77 S.Ct. at 1311.

**11.** Indeed, the Second Circuit has held that in reaching a determination of patent offensiveness of alleged obscene materials, inquiries into the context in which the work was viewed have no relevance, and are outside the scope of the pertinent *Miller* guideline. *United States v. Various Articles of Obscene Merchandise,* 600 F.2d 394 (2d Cir.1979).

**12.** A hypothetical situation can illustrate this point. Medical anatomy books or other similar

■ The overbreadth in these two sections does not render the entire South Carolina obscenity statutes unconstitutional. It is clearly permissible to excise the specific invalid sections, leaving the remaining statutes intact. *See Brockett*, 105 S.Ct. at 2802. We see no reason why this course is not the proper one for the instant case. A partial invalidation does not appear to be contrary to the legislative intent behind the statutes in question. Moreover, without the two sections, the obscenity statutes pass constitutional muster, as they fully comply with the requirements of *Miller*.

IV. SECTION 1983 CLAIM

■ Finally, we will briefly address Beigay's claim under 42 U.S.C. § 1983. We have already expressed our doubt that Beigay has suffered a deprivation of his constitutional rights by appellees' actions. Moreover, Beigay has failed to present sufficient evidence from which we may infer that the alleged misconduct was under the color of governmental custom or policy. Governmental entities cannot be sued under section 1983 because of the misbehavior of their officers and employees.

> Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. New York Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Finding no evidence to raise the issue whether appellees were acting pursuant to a custom or policy, we affirm the district court's order granting summary judgment in appellees' favor on this aspect of the case.

We partially affirm the district court's order rejecting Beigay's constitutional challenge to the South Carolina obscenity statutes. Because we find sections 16–15–

280(1) and (4) unconstitutionally overbroad, we reverse the district court's summary judgment motion against Beigay regarding those two specific statutes. The case, therefore, is remanded as to sections 16–15–280(1) and (4), with instructions that the district court enter a judgment in accordance with this decision. The remainder of the district court's order is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

educational materials, sold as such, might later be used in a different context or by people other than the intended readers. If this resulted in morbid sexual behavior and arousal of lewd and lascivious desires, a trier of fact, under the South Carolina obscenity statutes, could declare the medical materials obscene.