**Kathleen L. ECKSTEIN, Plaintiff,**

v.

**Richard CULLEN, Defendant.**

**Civ. No. 92–847–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 14, 1992.

Order on Denial of Reconsideration Dec. 15, 1992.

issue and proceed in accordance with HUD reg- ulations specifically relating to fraud.

Victor Michael Glasberg, Victor M. Glasberg & Assoc., Alexandria, Va., for plaintiff.

Richard Parker, Asst. U.S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

This case presents important first, fourth, and fifth amendment challenges to the Government's seizure of sexually explicit materials from plaintiff's bookstore. Defendant has moved to dismiss this case pursuant to Rule 12(b)(6), Fed.R.Civ.P., and plaintiff has moved for return of property pursuant to Rule 41(e), Fed.R.Crim.P. For

the reasons stated below, the Court grants defendant's motion to dismiss Counts I, II, III and V of the Complaint. The Court denies the motion with regard to Count IV of the Complaint. Finally, the Court grants the plaintiff's motion pursuant to Rule 41(e) and orders the return of plaintiff's property.

## I. *Facts*

The facts relevant to disposition of this motion are largely uncontested. Plaintiff is owner of the Book N' Card bookstore in Falls Church, Virginia. Defendant is the United States Attorney for the Eastern District of Virginia. On Friday, April 24, 1992, a team of seven Federal Bureau of Investigation ("FBI") agents interrupted business at the Book N' Card bookstore in Falls Church, Virginia, at approximately 12:00 noon, one of the store's busiest times, to execute a search warrant for materials allegedly in violation of the federal obscenity laws, 18 U.S.C. § 1460 *et seq.* After ushering all of the customers out of the store, the F.B.I. agents secured the store and placed a "Closed for Inventory" sign on the front door. While one team of agents photographed the store, another group of agents began searching the adult magazines section for the allegedly obscene materials identified in the search warrant.

Specifically, the search warrant authorized the agents to seize two copies of thirteen sexually explicit magazines that a magistrate judge had previously found probable cause to be obscene.[1] But the search warrant did not stop there; it also authorized the seizure of:

Two copies of any other magazines or books depicting explicit sexual acts, actual or simulated, whether between persons of the opposite sex or same sex, i.e., sexual intercourse, including but not limited to genital-genital, oral genital, anal-genital, or oral-anal intercourse; bestiality; masturbation; sexual sadistic or masochistic behavior; bondage; pedophilic sex acts; coprophilia; and vaginal or anal insertion.

The sweeping breadth of this category of materials reasonably led the store manager, James Lawson, to the view that the "explicit sexual acts" described above would likely be found in most of the store's adult magazines. Accordingly, Lawson offered F.B.I. agents copies of all the store's adult magazines, for examination on their own time, so that the store could promptly re-open. The F.B.I. agents agreed, and Lawson wrote, by hand, a consent form, which he and two F.B.I. agents signed.[2] The agents then seized approximately 137 adult magazines in addition to the thirteen magazines specifically identified in the search warrant. Plaintiff claims that the 137 additional magazines were seized pursuant to the second paragraph of the search warrant. Defendant disagrees, arguing that the additional magazines were seized pursuant to the Lawson's valid consent.

Three days after execution of the search warrant, defendant wrote a letter to plaintiff's counsel informing plaintiff that she would not be prosecuted for any past violations of the federal obscenity statutes,[3] but

---

**1.** These thirteen magazines included: (1) "Naughty Wives," (2) "Tail Ends," (3) "Stag," (4) "Forbidden Erotics," (5) "Couples in Heat," (6) "Thigh High," (7) "Juggs," (8) "Best of Club International," (9) "Climax," (10) "Hot Couples," (11) "Club Confidential," (12) "Tramp World Wide," and (13) "Man Shots."

**2.** The note read as follows:

I, James Lawson, General Manager of Book–N–Card Shop, 8110 Arlington Blvd, Falls Church, VA, freely and voluntarily provide two copies of each sexually explicit magazines and books to SA Bradley J. Garrett, FBI and SA James P. Doolin, Jr., FBI. No threats or promises have been made to me

and I voluntarily provide the magazines and books as previously described.

/s/ James H. Lawson
4/24/92

Witnesses
/s/ Bradley J. Garrett
SA Bradley J. Garrett, FBI, 4–24–92, Falls Church, VA
/s/ SA James P. Doolin, Jr., FBI, 4–24–92, Falls Church, VA.

**3.** This concession reflects the fact that, until recently, plaintiff had played no role in the operation or management of the store. She had only recently assumed responsibility for the assets of the Book N' Card bookstore, and Old Town News, a newspaper and magazine store in

that if she continued to sell material in violation of the federal obscenity laws after June 1, 1992, she "should expect to be prosecuted for being in violation of those laws."[4] To avoid future prosecution, plaintiff sought guidance from defendant as to what materials she could sell after June 1, 1992, without running afoul of the federal obscenity laws. She also sought the return of all the magazines that the Government did not intend to submit to the grand jury. In response, defendant refused to return any of the magazines or to provide plaintiff with an opinion as to which of the seized magazines were obscene. Instead, defendant referred plaintiff to caselaw construing the federal obscenity statutes under the test set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Thereafter, on May 31, 1992, the day before the expiration of the grace period, plaintiff submitted to defendant exemplars of every sexually explicit magazine in her store as of that date, again seeking guidance regarding which of them she might legally sell. Included in this batch of materials were copies of *Penthouse* and *Playboy*. Defendant again declined to give plaintiff any opinion concerning the legality of specific materials. Instead, defendant again referred plaintiff to the general obscenity standards found in *Miller* and its progeny.

In a final attempt to determine which, if any, of her adult magazines might reasonably be deemed acceptable under local "community standards" governing obscenity, plaintiff wrote, by counsel, to every commonwealth's attorney, police chief, and sheriff within the Alexandria Division of the Eastern District of Virginia, inquiring whether there existed any guidelines or policies which she might consult to make the necessary determination regarding obscenity. Responding officials confirmed that *Miller* and its progeny, plus the state and local laws that mirror *Miller*, provide the only available guidance for determining whether certain material is obscene. In the absence of specific guidance as to which magazines she could safely sell, and desiring immunity from criminal prosecution, plaintiff, on June 1, 1992, removed all sexually explicit material from the shelves at Book N' Card and Old Town News. This action put at risk the economic viability of Book N' Card and Old Town News because the sale of sexually explicit materials accounted for approximately forty percent of the revenues of both stores. Perceiving herself as between the Scylla of criminal prosecution and the Charybdis of financial ruin, plaintiff filed this suit seeking injunctive relief and a declaration of her rights.

In her complaint, plaintiff alleges five causes of action. In Count I, plaintiff contends that defendant imposed an unconstitutional prior restraint on her protected speech activities, by threatening criminal prosecution unless plaintiff ceased selling magazines that defendant deemed obscene. Count II alleges that defendant constructively seized her inventory of sexually explicit magazines without due process of law by threatening criminal prosecution unless she stopped selling magazines which defendant deemed obscene. In Count III, plaintiff asserts that the federal obscenity law, 18 U.S.C. § 1466, is unconstitutionally vague as applied, because it fails to give her appropriate guidance regarding which sexually explicit magazines she may permissibly sell. Count IV sets forth plaintiff's allegation that, by refusing to return the non-obscene magazines, defendant has effected an improper seizure under the Fourth Amendment and also deprived plaintiff of her property without due process of law. Finally, in Count V, plaintiff seeks a declaration that she may freely trade, without the threat of criminal prosecution, in the sexually explicit magazines removed from her shelves.[5]

Shortly after filing the complaint, plaintiff filed a motion for expedited answer and

---

Alexandria, Virginia, both of which she had inherited from her husband who had died a few weeks prior to the execution of the search warrant.

4. The explicit purpose of this grace period was to give plaintiff a reasonable opportunity to educate herself regarding the standards governing the sale of sexually explicit material.

5. Count V also sets forth the general relief that plaintiff requests, including a declaratory judgment, injunctive relief, and attorney's fees and costs.

discovery due to the economic urgency of this matter. The magistrate judge granted plaintiff's motion in material part on July 2, 1992. Under this expedited schedule, defendant filed a motion to dismiss the complaint, which is now ripe for disposition.[6] Also before the Court is plaintiff's motion for return of property pursuant to Federal Rule of Criminal Procedure 41(e).

## II. *Analysis*

### A. Count III

#### 1. *Standing to Challenge the Obscenity Statute*

■ The threshold issue on plaintiff's vagueness challenge to the federal obscenity statute, 18 U.S.C. § 1466 is whether plaintiff has standing to bring challenge to the statute. In *Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court found that to establish standing, at an "irreducible constitutional minimum," a plaintiff must show three elements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized ...; and (b) "actual or imminent, not 'conjectural or hypothetical,'".... Second, there must be a causal connection between injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant,".... Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan,* —— U.S. at ——, 112 S.Ct. at 2136 (citations omitted). *See also Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) ("plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief").

These principles, applied here, point persuasively to the conclusion that plaintiff has standing to challenge the alleged vagueness of § 1466. First, plaintiff has alleged an "injury in fact", that is, the loss of approximately forty percent of her revenues and the imminent demise of her business. This injury, allegedly incurred to avoid defendant's threat of prosecution, is clearly "concrete," "particularized," and "imminent." Second, this injury can "fairly ·... be traced to the challenged action of the defendant." Plaintiff alleges that she ceased selling all of her sexually explicit magazines only after Government investigators executed a search warrant on her business premises, and after she was specifically warned by letter from the United States Attorney that she faced prosecution for selling obscene materials. In these two respects, therefore, plaintiff's vagueness challenge stands on different footing from that of a challenge by a bookseller who merely sells sexually explicit magazines while on notice of the federal obscenity laws and the *Miller* standard. And third, plaintiff's alleged injury would "likely" be redressed were this Court to hold that the *Miller* standard, as applied here, is impermissibly vague. Having met the three *Lujan* requirements, plaintiff has standing to challenge the alleged vagueness of the federal obscenity statute.

#### 2. *Merits of Vagueness Challenge*

■ Well settled principles govern whether a statute is unconstitutionally vague. An unconstitutionally vague statute exists where the statute's "prohibitions are not clearly defined" and where a "person of ordinary intelligence" is not given a "reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Here, plaintiff claims that the federal obscenity statute is unconstitutionally vague under *Grayned* because it fails to provide her, a "person of ordinary intelligence", with a "reasonable opportunity to know" which sexually explicit magazines she may sell in the future. *Id.* The federal obscenity statute at issue states in pertinent part:

Whoever is engaged in the business of selling or transferring obscene matter,

---

6. Because the Court has accepted materials offered by the parties which were outside the pleadings, the Court appropriately treats defendant's motion as a motion for summary judgment and disposes of it as provided in Rule 56. *See* Rule 12(b) Fed.R.Civ.P.

**1112**

who knowingly receives or possesses with intent to distribute any obscene book, magazine, picture, paper, film, videotape, or phonograph or other audio recording, which has been shipped or transported in interstate or foreign commerce, shall be punished by imprisonment for not more than 5 years or by a fine under this title, or both.

18 U.S.C. § 1466. Incorporated into this statute is the definition of obscenity as articulated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).[7] It is this definition that plaintiff claims is unconstitutionally vague.

■ Notwithstanding plaintiff's arguments, the *Miller* definition of obscenity has withstood numerous vagueness challenges in the federal courts. Vagueness, in some degree, infects all statutes. This fact is a reflection of the poverty of language in the face of the richness of experience. The Supreme Court has expressly stated that the lack of precision in the definition of obscenity does not, in and of itself, render criminal statutes based on the *Miller* standard constitutionally suspect:

> "This Court ... has consistently held that lack of precision is not itself offensive to the requirements of due process. ... '[T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. ...' (citation omitted). These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '... boundaries sufficiently distinct for judges and juries to fairly administer the law. ...' (citation omitted)"

*Miller,* 413 U.S. at 27 n. 10, 93 S.Ct. at 2617 n. 10 (quoting *Roth v. United States,* 354 U.S. 476, 491–92, 77 S.Ct. 1304, 1312–13, 1 L.Ed.2d 1498 (1957)). To be sure, this definition draws a line between protected and unprotected, obscene material that is sometimes indistinct and always variable over time and across communities. It is also true that this definition can lead to cases that involve apparently similar materials, yet fall on opposite sides of the line. Even so, the Supreme Court has explicitly recognized that close questions concerning the applicability of an obscenity statute in a particular case do not suffice to invalidate the statute on vagueness grounds. *See Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). This principle has been unqualifiedly reaffirmed by the Supreme Court notwithstanding the possibility that uncertainties about the application of the *Miller* standard might "chill" the sale of material otherwise protected by the First Amendment. *See Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989) ("any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship" but "[t]he mere assertion of some possible self-censorship resulting from a statute is not enough to render [the law] unconstitutional"). In sum, the *Miller* definition, while admittedly imperfect, seems to be the best that can be done given society's political determination to proscribe obscene material, the vast range of such materials in terms of subjects and themes (e.g. bestiality, sadomasochism, etc.), the geographic and temporal variability of public tolerance for such materials and, finally, the limitations of language in the face of these complexities.

Applying these principles to the case at bar, it is clear that plaintiff's vagueness challenge to the federal obscenity statute must fail. Section 1466, which prohibits the selling of obscene matter, incorporates the *Miller* definition of obscenity. As such, the statute defines obscenity clearly enough to afford plaintiff, a "person of ordinary intelligence", a "reasonable opportunity to know" which sexually explicit magazines she is prohibited from selling in the future. *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298–99; *see also Vernon Beigay,*

---

7. According to *Miller,* obscene materials, outside the protection of the First Amendment and therefore subject to regulation, are "limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." 413 U.S. at 24, 93 S.Ct. at 2615.

*Inc. v. Traxler*, 790 F.2d 1088, 1093 (4th Cir.1986) (regulated materials need not be defined with "ultimate, god-like precision"); *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. at 60, 109 S.Ct. at 925.

The risk of prosecution, while it may be distressing to plaintiff, is a risk that must be borne by all who choose to sell sexually explicit materials. Dissemination of such materials tests the limit of First Amendment protection and, for that reason, is an activity not to be pursued by the faint-hearted. If plaintiff desires to sell sexually explicit materials at her bookstores, she must bear the risk that, if she sells materials in violation of the *Miller* obscenity standard, she may be prosecuted. Any uncertainty plaintiff may have about crossing the *Miller* line is insufficient to render § 1466 unconstitutionally vague.

Plaintiff acknowledges the settled authority rejecting vagueness challenges to obscenity statutes incorporating the *Miller* standard, but she asserts that her vagueness challenge is distinguishable in two respects. First plaintiff contends that her challenge is unique because her claim of a "chilling effect" is a compelling reality rather than a "mere assertion of some possible self-censorship." *Fort Wayne Books*, 489 U.S. at 60, 109 S.Ct. at 926. Second, plaintiff argues that her claim is different because it is presented in a civil (as opposed to a criminal) context. Neither distinction is valid.

Cases rejecting vagueness challenges to obscenity statutes have considered more than the "assertion of some possible self-censorship;" they have dealt with the actual existence of a "chilling effect." In fact, the actuality of "chilling" caused by obscenity statutes was squarely addressed by the Supreme Court in *Fort Wayne Books*. There, the Supreme Court expressly acknowledged the *"practical reality* that 'any form of criminal obscenity statute applicable to a bookseller *will* induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene.'" *Id.* at 60, 109 S.Ct. at 926 (quoting *Smith v. California*, 361 U.S. 147, 154–55, 80 S.Ct. 215, 219–20, 4 L.Ed.2d 205 (1959)) (emphasis added). The Court went on to say that even the reality of such self-censorship is not enough "to render an anti-obscenity law unconstitutional under our precedents." *Id.* Thus, plaintiff's claim of self-censorship, no matter how genuine or authentic, does not place her vagueness challenge on a different footing from the dozens of unsuccessful vagueness challenges that have preceded her.

■ Plaintiff's contention that her vagueness claim is unique because it arises in a civil rather than a criminal context is novel, but unpersuasive. Specifically, she claims that courts, in prior decisions, have winked at the vagueness of the obscenity standard because challenges to the statute have generally occurred in the criminal context, where procedural safeguards such as the presumption of innocence and the stringent burden of proof adequately ensure that a convicted defendant's conduct is criminally culpable, despite the unavoidable measure of vagueness inherent in the obscenity standard. This contention is simply wrong. There is no precedential support for it. To the contrary, the reported cases apply a uniform standard in assessing vagueness attacks in both civil and criminal contexts. *See, e.g., Vernon Beigay, Inc.*, 790 F.2d at 1088 (civil action seeking injunction against application of South Carolina obscenity statutes); *Alexander v. Thornburgh*, 713 F.Supp. 1278, 1291 (D.Minn.) (civil action seeking declaration that state or federal obscenity offenses could not serve as predicate acts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.), *dismissed without opinion, sub nom. Alexander v. Meese*, 881 F.2d 1081 (8th Cir.1989). But more fundamentally, plaintiff's civil-criminal distinction collapses when it its noted that her claim, though civil in form, seeks relief from *criminal* prosecution under the allegedly vague *criminal* obscenity statute. The point is that the obscenity statute is a *criminal* statute; it defines a crime; it has no civil application. A constitutional vagueness attack on the statute, whether mounted in a civil or criminal context, must be measured

and assessed in light of this fact. There is no logical or principled reason to impose a different vagueness standard on a criminal statute simply because the challenge arises in a civil action.

In sum, this Court joins the legions before it in holding that 18 U.S.C. § 1460, *et seq.*, incorporating the *Miller* standard, may be somewhat vague, but not fatally so. Accordingly, Count III must be dismissed.

### B. Count IV and Rule 41(e) Motion

Count IV of the Complaint asserts that, by seizing non-obscene communicative materials in the April 24 search, defendant unconstitutionally invaded plaintiff's Fourth Amendment right against unreasonable searches and seizures and her Fifth Amendment right against deprivation of property without due process of law.

■ The seizure pursuant to paragraph one of the search warrant transgressed no constitutional bounds. That paragraph authorized the seizure of two copies of each of thirteen specified magazines. In each instance, the magistrate issuing the warrant had found probable cause to believe the specified items were obscene. While an ultimate determination of obscenity in any ensuing criminal prosecution would eventually have to be made by a jury, there is no constitutional violation in seizing a limited number of items, for evidentiary purposes, after a preliminary determination of probable cause obtained from a judicial officer. *See, e.g., Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) (no right to adversarial hearing prior to issuance of warrant for seizure of allegedly obscene materials).

■ The second seizure, the seizure of approximately 137 adult magazines, stands on a different footing. If, as plaintiff alleges, the seizure was based on paragraph two of the warrant, the seizure did transgress constitutional bounds, because paragraph two of the warrant was fatally overbroad. The relevant language authorized seizure of "[t]wo copies of any other magazines or books depicting similar explicit sexual acts, actual or simulated, between persons of the opposite sex or same sex," and then proceeded to give specific (apparently non-exhaustive) examples of qualifying sexual acts. This language allowed the seizure of all sexually explicit material, without regard to whether the material might be obscene, as that term has been defined by the Supreme Court in *Miller.* The warrant made no effort to ensure that seized materials were "limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Miller,* 413 U.S. at 24, 93 S.Ct. at 2615.[8] By failing to distinguish obscene materials from non-obscene sexually-explicit materials which enjoy protection under the First Amendment, the warrant vests *de facto* discretion in the executing officers to make determinations regarding the obscenity of specific items (as revealed by the investigators' decision not to seize the Updike novel or other analogous qualifying works). This unbridled discretion is fatal to the search warrant under the relevant jurisprudence of the Supreme Court. *See, e.g., Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 325, 99 S.Ct. 2319, 2323, 60 L.Ed.2d 920 (1979) (invalidating warrant that "left it entirely to the discretion of the officials conducting the search to decide what items were likely obscene and to accomplish their seizure").

The Government argues that a warrant need not contain express language reflecting the elements of the *Miller* standard. Not surprisingly, the Government's cases are easily distinguished from this case. In *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155

---

**8.** Worth noting in this regard is that the reach of the warrant's second paragraph extended to items present in the *Book N' Card* bookstore such as John Updike's *Rabbit is Rich,* winner of a 1981 Pulitzer Prize. This novel depicts "ex-

plicit sexual acts" and, thus, was arguably within the ambit of the warrant; yet there can be no serious contention that this novel might be obscene.

(1989), the Fourth Circuit upheld a warrant for materials depicting, "actual of simulated sexual intercourse ..." What the Government fails to mention is that immediately preceding the quoted language is a limitation requiring that seized materials depict *"minors* engaged in sexually explicit conduct." *Dornhofer,* 859 F.2d at 1198 (emphasis added). The Fourth Circuit explicitly based its validation of the warrant on the fact that the warrant sought material involving the sexual exploitation of children. *Id.* The Supreme Court has sharply and understandably distinguished between child pornography and other forms of sexually explicit matter, holding that pornographic materials involving minors may be permissibly regulated without reference to the *Miller* standard. *New York v. Ferber,* 458 U.S. 747, 761, 102 S.Ct. 3348, 3356, 73 L.Ed.2d 1113 (1982).

Other cases cited by the Government involved warrants which, similar to the warrant in this case, used a descriptive categorical approach to define obscene materials subject to seizure. Unlike the instant case, however, these warrants included language limiting the discretion of the executing officers by requiring that the seized materials, taken as a whole, appeal to the prurient interest in sex and have no serious literary, artistic, political, or scientific value. *See In re Search of Kitty's East,* 905 F.2d 1367, 1372 (10th Cir.1990); *Sequoia Books, Inc. v. McDonald,* 725 F.2d 1091, 1093 (7th Cir.1984), *cert. denied,* 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984).[9] This language, critical to the validity of the warrants, serves to constrain the discretion of the executing officers, as it requires that any seized materials conform to the basic elements of the *Miller* standard. Because the warrant in the instant case contains no comparable limiting language, it is impermissibly overbroad.

Alternatively, the Government contends that the magazines in question were obtained, not under the authority of paragraph two of the warrant, but instead pursuant to the validly granted consent of the manager of the Book N' Card store, James Lawson. According to the Government, any deficiency in the warrant is irrelevant given Lawson's subsequently granted consent, and therefore the motion to dismiss remains appropriate with regard to Count IV of the Complaint despite any warrant deficiency.

■ It is well established that a search pursuant to the subject's voluntary consent "is a constitutionally permissible and wholly legitimate aspect of effective police activity." *Schneckloth v. Bustamonte,* 412 U.S. 218, 228, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). The test for voluntariness in this context is whether, given "the totality of the circumstances," the defendant's will has been "overborne" or "his capacity for self-determination critically impaired." *Id.* at 225, 93 S.Ct. at 2046. In general, courts have refused to find that an individual's consent was voluntarily granted when such consent is obtained in the face of a search warrant that is later found to be deficient. As the Supreme Court has stated:

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist that search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.

*Bumper v. North Carolina,* 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *see also Lo–Ji Sales,* 442 U.S. at 329, 99 S.Ct. at 2326 (applying *Bumper* in the context of a search for obscene materials). In such a situation, the Government bears a heavy burden to show that consent was, in fact, voluntarily given.

■ This case presents a factual situation similar in all relevant respects to the *Bumper* case, and the Court sees nothing in the present record that would serve to rebut the presumption against a finding of voluntary consent. Yet, the issue of volun-

**9.** In dicta, the *Sequoia Books* court indicated that the language in the warrant relating to prurient interest and literary or artistic value was mere "surplusage." 725 F.2d at 1093. To the extent that cases such as *Sequoia Books* and *In re Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1319 (9th Cir. 1981), suggest that a warrant would be valid without express language requiring that seized materials conform to all three prongs of the *Miller* standard, they are inconsistent with the Supreme Court's holding in *Miller,* 413 U.S. at 24, 93 S.Ct. at 2615 ("[W]e now *confine* the permissible scope of [obscenity] regulation.... [An obscenity] offense must ... be *limited* to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.") (emphasis added).

tary consent is essentially a question of fact, *see United States v. Hummer*, 916 F.2d 186, 189 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991), and it appears that this fact is disputed. Defendant relies on Lawson's written consent form which states that he "freely and voluntarily provide[d]" the magazines, "[n]o threats or promises hav[ing] been made to me." Plaintiff has filed with the Court an affidavit executed by Lawson, in which he states:

> I was at all times aware that I was acting under the dual compulsion of (a) a legal warrant and (b) the need, which I explained to the agents, to minimize the great interference which the agents had caused to our operations.... [The seizure] was not the result of any action of mine that was free or voluntary....

At this stage, therefore, dismissal is unwarranted. The parties are entitled to an opportunity to develop the factual record on this issue, and if credibility emerges as an important question, a hearing may be necessary so that the Court can evaluate the witnesses.

■ While the consent issue cannot now be resolved, plaintiff's Motion for Return of Property, pursuant to Rule 41(e), Fed. R.Crim.P., is ripe for disposition. *See, e.g., White Fabricating Co. v. United States*, 903 F.2d 404 (6th Cir.1990) (Rule 41(e) authorizes motions for return of property before criminal prosecution has begun); *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir.1974) (same), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). Rule 41(e) states, in relevant part:

> A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property.

Fed.R.Crim.P. 41(e). Regardless of whether the magazines were seized pursuant to the warrant or pursuant to Larson's consent, plaintiff is entitled to their return. If the magazines were seized pursuant to the deficient search warrant, then, by the plain terms of the rule, plaintiff would be enti-

tled to their return. If the magazines were obtained by Lawson's consent, the Government would have the right to retain possession for a reasonable time to preserve them as evidence in any resulting criminal prosecution. *See United States v. Premises Known as 608 Taylor Ave., Apartment 302*, 584 F.2d 1297, 1302 (3rd Cir.1978).

In this case, the defendant has had possession of plaintiff's magazines for over five months. In many situations, five months would not be an unreasonable period of time for a prosecutor to continue investigation of a criminal offense. The specific circumstances of this case, however, point persuasively to the conclusion that the defendant has retained possession of plaintiff's property for longer than is reasonably necessary. First, defendant has represented to plaintiff that she will not be prosecuted with regard to any materials sold prior to June 1, 1992. The materials in question were seized on April 24, 1992, and therefore cannot serve any evidentiary function in a prosecution against the plaintiff.[10] Second, both the Government and this Court must be particularly sensitive to the fact that the seized materials, to the extent that they are not obscene, are communicative media within the protection of the First Amendment. Thus, while the Government's seizure and retention of the magazines may not rise to the level of a prior restraint (*see* Part II.C., *infra.*), the First Amendment concerns implicated by this case do affect the amount of time that defendant reasonably may retain plaintiff's property. *See In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1299 (4th Cir.1987) (First amendment rights do not vanish completely in the absence of prior restraint.... When governmental searches trench on first amendment concerns, courts have been careful to scrutinize the searches much more closely....), *rev'd on other grounds, sub nom. United States v. R. Enterprises, Inc.*, 498 U.S. 292, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991).

For the foregoing reasons, the Court finds that either the defendant is in unlawful possession of plaintiff's property, or that he has held plaintiff's property in lawful possession for an unreasonable amount of time. In either case, plaintiff is entitled

---

**10.** The Government has represented that there is an ongoing investigation involving targets other than the plaintiff, to which the plaintiff's magazines may be relevant. In light of the severe economic burden that the Government's actions have imposed on the plaintiff, however, continued retention of the plaintiff's inventory is unreasonable. If the Government needs evidence relevant to the prosecution of other entities, it should obtain that evidence from those other entities.

to return of the magazines under Rule 41(e).[11]

## C. Counts I and II

In Counts I and II, plaintiff alleges that the actions of defendant constitute an illegal prior restraint on her First Amendment rights and/or a taking of her property in violation of the Due Process clause. Her argument, in essence, is that the defendant's threat to prosecute her if she sells materials found to be obscene under the *Miller* standard, coupled with the vagueness of the *Miller* test for obscenity, have reasonably caused her to refrain from selling *any* sexually explicit material. This, she claims, amounts to an unlawful prior restraint in violation of the First Amendment and a deprivation of property without due process of law in violation of the Fifth Amendment.

■ Once it is established that the obscenity statute is not unconstitutionally vague (*see* Part II.A., *supra.*), however, plaintiff's argument loses any force it may have had. Given the validity of the obscenity statute, defendant's letter to plaintiff, warning her that "[i]f she continues to sell material that is in violation of the Federal obscenity laws, she should expect to be prosecuted," only states the rather unremarkable proposition that the United States Attorney's Office intends to prosecute violations of the law.

Plaintiff argues that it is impermissible for defendant to make a preliminary determination of obscenity, and to initiate a criminal prosecution on that basis. Yet such a determination is no different from the decision, routinely made by prosecutors with regard to every other type of criminal offense, that an individual has violated a law and should be prosecuted for a crime. Obscenity prosecutions could *never* be brought before the courts without an initial determination by a prosecutor's office that particular items were obscene under the *Miller* standard and, therefore, outside the scope of the First Amendment.

The case at bar is entirely distinguishable from those cases, cited by plaintiff, that have held it impermissible for a prosecutor to "blacklist" certain publications and to indicate that any person disseminating such materials will be prosecuted under the obscenity laws. *See, e.g., Bantam Books Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Drive in Theatres, Inc. v. Huskey,* 435 F.2d 228 (1970); *Council for Periodical Distributors Association v. Evans,* 642 F.Supp. 552 (M.D.Ala. 1986), *aff'd in relevant part,* 827 F.2d 1483 (11th Cir.1987).[12] Those cases are based on the sensible proposition that, by singling out specific works and threatening prosecution for distribution of those works, the Government can effect *de facto* censorship without any involvement of the judicial system. *See Bantam Books* 372 U.S. at 69–70, 83 S.Ct. at 639 (by "obviating the need to employ criminal sanctions, the State has at the same time eliminated the safeguards of the criminal process.").

In sharp contrast, defendant's communication to plaintiff did not identify any specific magazines that would trigger an obscenity prosecution. Thus, there was no attempt to pressure the plaintiff into a certain course of action by a means separate and independent from the judicial system. Even if read as a "threat," defendant's letter to plaintiff was no more than a threat to invoke the judicial system to determine if the plaintiff had committed a crime. Such a "threat" cannot constitute an impermissible prior restraint unless the simple existence of the United States Attorney Office, and the attendant risk to plaintiff of prosecution for obscenity violations, was itself an illegal prior restraint. The Supreme Court has expressly rejected such a finding. *See Fort Wayne Books,* 489 U.S. at 60, 109 S.Ct. at 926 (upholding application of obscenity statute despite noting that " 'any form of criminal obscenity statute applicable to a bookseller will ... have some inhibitory effect on the dissemination of material not obscene.' " (*quoting Smith v. California,* 361 U.S. 147, 154–55, 80 S.Ct. 215, 219–20, 4 L.Ed.2d 205 (1959))).

Similarly distinguishable are the cases cited by plaintiff involving bad faith prosecutorial conduct. *See, e.g., PHE, Inc. v. United States Department of Justice,* 743 F.Supp. 15, 20 (D.D.C.1990) (refusing to dismiss complaint seeking to enjoin defendant from "effort to cause plaintiffs to

---

**11.** This conclusion applies with equal force to the magazines seized under paragraph one of the search warrant, which, for the reasons outlined above, though lawfully seized, have been retained for an unreasonably long period of time.

**12.** This authority also confirms that defendant acted properly in declining plaintiff's invitation to issue a list of obscene publications.

face criminal prosecutions in multiple federal district courts for the purpose of coercing plaintiffs to refrain from distributing [non-obscene sexually explicit] materials"); *see also Dombrowski v. Pfister*, 380 U.S. 479, 482, 85 S.Ct. 1116, 1118, 14 L.Ed.2d 22 (1965) (enjoining prosecutions under Louisiana's Communist Propaganda Control Law when threats of prosecution "are not made with any expectation of securing valid convictions, but rather are part of a plan to ... harass"); *Black Jack Distributors, Inc. v. Beame*, 433 F.Supp. 1297, 1306–07 (S.D.N.Y.1977). In those cases, like the "blacklist" cases, the courts found that the activities of the prosecution were designed, not to obtain a jury verdict regarding the status of the materials in question, but instead, to restrain distribution of certain materials *independent* of a verdict by a court. In such situations, the courts have consistently held that the bad faith or harassment on the part of the prosecution may rise to the level of a prior restraint.

Here, there is no allegation, nor any evidence, of bad-faith prosecution. Rather, plaintiff points only to the burden that would be inflicted upon her in defending herself from a single criminal action. As noted above, the Supreme Court has held that the burden of defending against a single, legitimately instituted, criminal obscenity prosecution is not, by itself, a constitutionally objectionable prior restraint. *See Fort Wayne Books*, 489 U.S. at 60, 109 S.Ct. at 926. Plaintiff's case gains no weight from the fact that, in addition to being subjected to threatened criminal prosecution, plaintiff has had an overly broad search warrant executed against her business premises (*see* Part II.B., *supra*). Although the Government's seizure of communicative materials may constitute a prior restraint, *see Marcus v. Search Warrant*, 367 U.S. 717, 736, 81 S.Ct. 1708, 1718, 6 L.Ed.2d 1127 (1961), the Court has been careful to draw a sharp distinction between

seizure of a business' entire inventory, and seizure of representative copies of a publication for "bona fide" evidentiary purposes. *See Heller*, 413 U.S. at 491–92, 93 S.Ct. at 2794–95. The sound rationale behind this distinction is that a "blanket" seizure may succeed in suppressing an idea contained in the seized publication. Seizure of a limited number of copies of a publication, though perhaps financially burdensome, does not prevent dissemination of any ideas contained in the work. *See Fort Wayne Books*, 489 U.S. at 46, 109 S.Ct. at 916 ("the publication may not be taken out of circulation completely until there has been a determination of obscenity after an adversary hearing"). The seizure here was not a "blanket" seizure; agents seized only two representative copies of each publication. Admittedly, the search warrant upon which the investigators relied was overly broad, and the implementation of such a warrant may be an actionable wrong for which plaintiff is entitled to damages. But plaintiff cannot successfully claim that the seizure had the broader consequence of restraining her from doing any business whatsoever with regard to sexually explicit materials. Her decision to cease selling any sexually explicit materials, while perhaps reasonable in light of the potential for being prosecuted for a criminal obscenity violation, was a product of her own choice. Defendant's activities, even the overly broad search of plaintiff's store, do not rise to the level of harassment that courts have required before finding a prior restraint.[13] Accordingly, plaintiff may not recover any damages other than those directly flowing from the deprivation of the publications that were actually seized.

For the foregoing reasons, the Court finds that the activities of defendant did not result in a prior restraint on plaintiff's First Amendment rights or a constructive taking of plaintiff's inventory. Accordingly, Counts I and II of the Complaint must be dismissed.

---

**13.** This does not mean that there are no circumstances under which the execution of a search warrant can, by itself, constitute a prior restraint. In fact, the Court is troubled by the apparent lack of effort, on the part of the defendant, to minimize the intrusiveness of the search of the Book N' Card store. The search was conducted in the middle of the business day at one of the store's busiest times and lasted for an extensive period of time. While there is no general requirement that a search warrant be executed in an unobtrusive fashion, different rules apply when Government action runs the risk of restraining legitimate First Amendment expression. *Cf. In re Grand Jury Subpoena*, 829 F.2d at 1302 ("when the government seeks to subpoena material that is presumptively protected by the first amendment, it should do so in the least intrusive manner possible"). Nevertheless, the Court does not, on these facts, believe that the defendant's single search of plaintiff's store rose to the level of harassment necessary to find a prior restraint based on prosecutorial bad faith.

## D. Count V

In Count V plaintiff invites this Court to redress her alleged injury by adjudicating the obscenity or non-obscenity of each of the sexually explicit magazines in her inventory. The Court declines this invitation. As defendant correctly asserts, plaintiff lacks standing to request such relief.

To establish standing, plaintiff must, as stated before, meet three requirements: (1) she must have suffered an injury in fact, (2) there must be a causal connection between plaintiff's injury and the challenged action of defendant, and (3) it must be likely as opposed to merely speculative that plaintiff's injury will be redressed by a favorable decision. *See Lujan*, ⸺ U.S. at ⸺, 112 S.Ct. at 2136; *Allen v. Wright*, 468 U.S. at 751, 104 S.Ct. at 3324. Here, plaintiff lacks the third element. Her alleged injury, the loss of revenue from the sales of her sexually explicit magazines, cannot be redressed by a declaratory judgment concerning the obscene or non-obscene nature of the magazines at issue. Such a declaration by this Court, cannot preclude the possibility that plaintiff may be investigated or indicted in the future for violating § 1466 based on the unknown content of future editions of the magazines. *See Hamling v. United States*, 418 U.S. 87, 126–27, 94 S.Ct. 2887, 2912, 41 L.Ed.2d 590 (1974) ("A judicial determination that particular matters are not obscene does not necessarily make them relevant to the determination of the obscenity of other materials...."); *Council for Periodical Distributors*, 642 F.Supp. at 565 ("It is impossible for anyone, including a judge, to determine whether magazine issues that have not yet been published are obscene."). Where, as here, a judicial adjudication of the obscenity or non-obscenity of the magazines will not effectively resolve the uncertainty which gave rise to the proceeding, no declaratory judgment should be entered. *See Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C.Cir.1991) (declining to enter declaratory relief where it was "unlikely" that declaration "will actually relieve the injury...."), *cert. denied*, ⸺ U.S. ⸺, 112 S.Ct. 1513, 117 L.Ed.2d 650 (1992). Accordingly, this Court finds that plaintiff is not entitled to a judicial adjudication of the obscenity or non-obscenity of the magazines at issue.

### *Conclusion*

For the reasons set for above, this Court grants defendant's motion to dismiss with respect to Counts I, II, III, and V of the Complaint. The Court denies the motion to dismiss with regard to Count IV of the Complaint; plaintiff may proceed to seek damages resulting from the overly broad search warrant executed against her business premises.

### ORDER ON DENIAL OF RECONSIDERATION

By Order and Memorandum Opinion dated October 14, 1992, the Court, *inter alia*, dismissed Count III of plaintiff's Complaint, which had alleged that the federal obscenity statute was unconstitutionally vague as applied. In support of Count III, plaintiff had argued that the statutory definition of obscenity was insufficiently definite to give her guidance as to which sexually explicit publications she could legally sell. The Court rejected that argument, relying on *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and its extensive progeny. *See Eckstein v. Cullen*, 803 F.Supp. 1107 (E.D.Va.1992).

Now, plaintiff seeks reconsideration of the dismissal of Count III, and has submitted a copy of Madonna's book, *Sex*, claiming that the book is a further example of a publication with indeterminate legality under the obscenity statute. Plaintiff argues that she is unable to sell the book, despite the fact that it has been the best-selling non-fiction book in the country, because neither she nor anyone else can accurately predict whether the book would be found to be obscene under 18 U.S.C. § 1466, thereby subjecting a seller to potential criminal penalties.

Plaintiff presents no new arguments in support of her Motion for Reconsideration. The fact that *Sex* is a publication that has sold a large number of copies is irrelevant to the analysis set forth in the Court's previous Memorandum Opinion. Plaintiff's submission simply does not suggest any legal arguments different from those ably advanced by the plaintiff prior to the Court's initial ruling. An assessment of the possible obscenity of *Sex* is precisely the same determination that must be made by a vendor prior to the sale of any other sexually explicit publication. This determination has been repeatedly upheld by the federal courts against challenges for

**1120**

vagueness. *See, e.g., Miller*, 413 U.S. at 27 n. 10, 93 S.Ct. at 2617 n. 10; *Vernon Beigay, Inc. v. Traxler*, 790 F.2d 1088, 1093 (4th Cir.1986).

At most, plaintiff's most recent submission only confirms, to paraphrase the observation of H.L. Mencken, that nobody will ever go broke underestimating the taste and intelligence of the American public.[1] In fact, after having perused the pages of *Sex*, the Court is persuaded that there is at least one obvious obscenity in this case: it is obscene that an individual could amass great wealth by purveying to the public such nonsense as *Sex*.

For the foregoing reasons, as more fully set forth in the previously released Memorandum Opinion, plaintiff's Motion for Reconsideration is DENIED.

---

1. It is amusing, if not alarming, to recall that Mencken said this in reference to the prospects for the then new *Reader's Digest*.