Kathleen L. ECKSTEIN, Administratrix of the Estate of Harry J. Eckstein, Jr., Plaintiff–Appellant,

v.

Kenneth E. MELSON, Defendant–Appellee.

No. 93–1051.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 25, 1993.

Decided March 16, 1994.

**ARGUED:** Victor Michael Glasberg, Victor M. Glasberg & Associates, Alexandria, VA, for appellant. Michael Scott Raab, Civil Division, U.S. Dept. of Justice, Washington, DC, for appellee. **ON BRIEF:** Jeanne Goldberg, Victor M. Glasberg & Associates; John Kenneth Zwerling, William B. Moffitt, Lisa B. Kemler, Moffitt, Zwerling & Kemler, P.C., Alexandria, VA, for appellant. Stuart E. Schiffer, Acting Asst. Atty. Gen., Kenneth

E. Melson, U.S. Atty., Barbara L. Herwig, Civil Division, U.S. Dept. of Justice, Washington, DC, for appellee.

Before NIEMEYER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

FRANK A. KAUFMAN, Senior District Judge:

Kathleen Eckstein, plaintiff-appellant in the within case, appeals from the dismissal of certain of her claims pursuant to Fed. R.Civ.P. 12(b)(6) by U.S. District Judge T.S. Ellis, III. Eckstein alleges that the federal obscenity statute, 18 U.S.C. § 1460 *et seq.*, particularly 18 U.S.C. § 1466, is unconstitutional under the First and Fifth Amendments.[1] For the reasons to be stated *infra,* we affirm the district court's dismissal of Eckstein's claims.

### I.

Eckstein owns and operates the Book N' Card Bookstore located in Falls Church, Virginia.[2] Until recently, as part of her inventory, Eckstein carried books and magazines of an explicit sexual nature.[3] The sale of such materials accounted for approximately forty percent of her revenues at Book N' Card and at Old Town News, another store owned and operated by Eckstein in Alexandria. Her thriving business in materials of that nature came to a rather abrupt halt, however, as a result of a visit by a team of Federal Bureau of Investigation ("FBI") agents and a subsequent letter from the then-United States Attorney for the Eastern District of Virginia, Richard Cullen, warning Eckstein of prosecution if she continued to sell, after June 1, 1992, materials which ran afoul of federal obscenity laws.

Eckstein's travails began with a Friday, April 24, 1992, visit by seven FBI agents, at approximately noon, during one of Eckstein's peak periods of business. Upon arrival, the agents cleared the store of customers and placed a "Closed for Inventory" sign on the front door. They then proceeded "to execute a search warrant for materials allegedly in violation of the federal obscenity laws." *Eckstein,* 803 F.Supp. at 1109. The warrant consisted of two parts. The first part authorized seizure of two copies of thirteen specific magazines carried by Eckstein which a federal magistrate judge "had previously found probable cause to be obscene." *Id.* The second paragraph of the warrant allowed the seizure of:

> Two copies of any other magazine or books depicting explicit sexual acts, actual or simulated, whether between persons of the opposite sex or same sex, i.e., sexual intercourse, including but not limited to genital-genital, oral-genital, anal-genital, or oral-anal intercourse; bestiality; masturbation; sexual sadistic or masochistic behavior; bondage; pedophilic sex acts; coprophilia; and vaginal or anal insertion.

*Id.* Judge Ellis determined the second paragraph of the search warrant to be "fatally over-broad." *Id.* at 1114. That determination by Judge Ellis has not been appealed by either party and accordingly is not at issue in the within appeal.

Three days after the April 24, 1992, search by the FBI agents, then-United States Attorney Richard Cullen wrote a letter to Eckstein's attorney warning Eckstein that if she "continued to sell material in violation of the federal obscenity laws after June 1, 1992, she 'should expect to be prosecuted for being in violation of those laws.'" *Id.* at 1109–10. In order to forestall future prosecution, Eckstein sought guidance from the office of the U.S. Attorney as to what materials complied with the federal statutes. Appellee refused to provide any responsive comments or in-

---

**1.** Several other issues in the court below, including Fourth Amendment search and seizure questions, are not before this Court in the within appeal.

**2.** The bulk of the facts recited herein is drawn from Judge Ellis's opinion below. *See Eckstein v.*

*Cullen,* 803 F.Supp. 1107, 1109–10 (E.D.Va. 1992).

**3.** Examples of the magazines sold at Eckstein's store included such titles as "Naughty Wives," "Tail Ends," "Stag," "Forbidden Erotics," "Juggs," and the like.

struction, other than to direct Eckstein to case-law construing the federal obscenity laws under the standards set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

> Thereafter, on May 31, 1992, one day before the expiration of the grace period, [Eckstein] submitted to [appellee] exemplars of every sexually explicit magazine in her store as of that date, again seeking guidance regarding which of them she might legally sell. Included in this batch of material were copies of *Penthouse* and *Playboy*.

*Eckstein*, 803 F.Supp. at 1110. Eckstein also made written inquiries of "every commonwealth's attorney, police chief, and sheriff within the Alexandria Division of the Eastern District of Virginia," requesting guidance. *Id.* Notwithstanding all of Eckstein's said requests, she received no instruction other than a general reference to *Miller* and to its progeny. As a result of her purported confusion, and the lack of specific direction as to the law from the authorities, on June 1, 1992, Eckstein states that she proceeded to remove all sexually explicit material from both of her stores and that the decision so to do placed her (Eckstein) at considerable financial risk, given the large share of Eckstein's revenues attributed to the sales of those types of materials.

Eckstein subsequently filed suit in the court below, seeking, *inter alia,* a determination that the federal obscenity statute is unconstitutional. Judge Ellis dismissed that claim, pursuant to Fed.R.Civ.P. 12(b)(6), and Eckstein filed a timely notice of appeal to this Court.[4]

Eckstein's contentions in this appeal seem to center around one basic question: whether or not the federal obscenity statute, 18 U.S.C. § 1460, *et seq.*,[5] provides constitutionally adequate notice to a prospective bookseller under due-process principles. Eckstein also argues that the statute's definition of obscenity is unconstitutionally vague when applied in the absence of the due-process safeguards attendant to the criminal process.[6]

## II.

■ The federal obscenity statute does not itself contain an express definition of obscenity. However, the Supreme Court has written as follows in *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973):

> (a) whether "the average person, applying contemporary community standards" would find the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin*, [408 U.S. 229, 230, 92 S.Ct. 2245, 2246, 33 L.Ed.2d 312 (1972)], quoting *Roth v. United States*, [354 U.S. 476, 489, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498 (1957)]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state [or federal] law; and (c) whether the work, taken as a whole, lacks

---

**4.** The issues raised in the within appeal are questions of law which we review *de novo*. *See, e.g., Baber v. Hospital Corp. of America*, 977 F.2d 872, 876 (4th Cir.1992).

**5.** § 1466 is the section most directly at issue in the within case. It provides in pertinent part:
> (a) Whoever is engaged in the business of selling or transferring obscene matter, who knowingly receives or possesses with intent to distribute any obscene book, magazine, picture, paper, film, videotape, or phonograph or other audio recording, which has been shipped or transported in interstate or foreign commerce, shall be punished by imprisonment for not more than 5 years or by a fine under this title, or both.
18 U.S.C. § 1466.

**6.** We note that Judge Ellis determined that appellant possessed standing to pursue her claims,

and the government does not challenge that conclusion in this appeal. In any event, our view in that regard is in accord with that of the district court. *See Eckstein*, 803 F.Supp. at 1111. Appellant was faced with a "real and immediate" threat of prosecution. *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir.1986); *see also Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Further, as Judge (now Chief Judge) Ervin has noted, " '[w]here first amendment rights are at stake, case or controversy and standing requirements have been relaxed so that litigants may preserve rights of free expression.' " *Vernon Beigay, Inc. v. Traxler*, 790 F.2d 1088, 1091 n. 1 (4th Cir.1986) (quoting *American Booksellers Ass'n v. Strobel*, 617 F.Supp. 699, 703 (E.D.Va.1985) (Williams, J.)).

serious literary, artistic, political, or scientific value.

That definition has been deemed controlling in subsequent decisions. *See Marks v. United States,* 430 U.S. 188, 190, 97 S.Ct. 990, 991–92, 51 L.Ed.2d 260 (1977); *Hamling v. United States,* 418 U.S. 87, 114, 94 S.Ct. 2887, 2906, 41 L.Ed.2d 590 (1974); *United States v. 12 200–Ft. Reels of Super 8 MM. Film,* 413 U.S. 123, 129–30, 93 S.Ct. 2665, 2669–70, 37 L.Ed.2d 500 (1973). Accordingly, we consider Eckstein's attacks on the statute in the light of the *Miller* standard and in view of the rejection by this circuit and by other federal courts of attacks upon the *Miller* standard claiming that the standard is unconstitutionally vague. *See, e.g., Vernon Beigay, Inc.,* 790 F.2d at 1093 (" 'unavoidable imprecision is not fatal and celestial precision is not necessary,' ") (quoting *Hart Book Stores, Inc. v. Edmisten,* 612 F.2d 821, 833 (4th Cir.1979), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980)). In *Miller,* the Supreme Court itself recognized the difficulties inherent in determining whether or not a particular item is obscene but nonetheless asserted that:

> The mere fact juries may reach different conclusions as to the same material does not mean that constitutional rights are abridged. As this Court observed in *Roth v. United States,* [354 U.S. at 492 n. 30, 77 S.Ct. at 1313 n. 30] "it is common experience that different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system. *Cf. Dunlop v. United States,* [165 U.S. 486, 499–500, 17 S.Ct. 375, 379–80, 41 L.Ed. 799 (1897) ]."

*Miller,* 413 U.S. at 26 n. 9, 93 S.Ct. at 2616 n. 9. " 'That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.' " *Id.* at 27 n. 10, 93 S.Ct. at 2616 n. 10 (quoting *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947)).

In effect, appellant concedes this to be the state of the law, for she argues here that appellant's vagueness challenge presents a novel twist which somehow sets it apart from the precedents and renders the *Miller* standard void in this case. Appellant argues that the due-process challenges which in the past have been brought against the standard on vagueness grounds were decided in the context of the full panoply of due-process protections afforded defendants in criminal prosecutions. However, in the instant civil case, appellant maintains that these protections are fatally absent and that the actions taken by the government have placed her unconstitutionally in fear of imminent prosecution.

That reasoning is not persuasive. First, as Judge Ellis noted in his decision below, the cases dealing with the question of vagueness have applied the same analysis regardless of whether the setting has been criminal or civil. *See, e.g., Vernon Beigay, Inc., supra.* Furthermore, in this case, appellant herself has *created* a civil posture by bringing suit. Acting within what was determined to be her procedural right so to do, Eckstein elected not to wait until an actual prosecution materialized. However, that procedural step does not obscure that what is at issue is an underlying criminal statute. As Judge Ellis reasoned, "the obscenity statute ... defines a crime; it has no civil application." *Eckstein,* 803 F.Supp. at 1113. Thus, the purported novelty of appellant's claim simply vanishes upon close examination. We need not decide whether, under certain circumstances, the obscenity definition of *Miller* incorporated into the statute might be unconstitutionally vague. Rather, herein, we determine only that appellant has failed to establish such a claim in this case, and we reaffirm the many precedents rejecting such vagueness challenges. In the final analysis, appellant's claim fundamentally deals with an alleged lack of fair notice to appellant as to what materials she lawfully may sell without risk of prosecution.

### III.

This Court previously has had occasion to decide whether an obscenity law incorporating the *Miller* definition provides fair notice to a prospective defendant in Eckstein's situation. In *Olson v. Leeke,* 744 F.2d 1061, 1062 (4th Cir.1984), *cert. denied,* 471 U.S. 1053,

105 S.Ct. 2112, 85 L.Ed.2d 477 (1985), Judge Haynsworth explicitly wrote:

It is then suggested that due process requires that a defendant, charged with selling explicit sexual material to willing adult purchasers, is entitled to a pre-indictment civil determination that the material is obscene. We find no such requirement in the cases or in reason. In *Miller v. California,* [413 U.S. at 24, 93 S.Ct. at 2616], the [C]ourt addressed the problem of fair notice and specifically concluded that observance of the prerequisites to prosecution set forth in *Miller* would provide fair notice to commercial dealers in such materials.

Absent a reconsideration of that doctrine by this Court *en banc,* or by the Supreme Court, we are bound by that determination. *See United States v. Guglielmi,* 819 F.2d 451, 457 (4th Cir.1987), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988); *see also United States v. Moore,* 949 F.2d 68, 71 (2d Cir.1991), *cert. denied, Salami v. United States,* —— U.S. ——, 112 S.Ct. 1678, 118 L.Ed.2d 396 (1992). Moreover, in *Vernon Beigay, Inc.,* Judge Ervin commented:

The Supreme Court has explicitly stated that when the *Miller* prerequisites are used in a state's regulatory scheme, a dealer in obscene materials is provided with fair notice that his public and commercial activities may bring prosecution. *Miller,* [413 U.S. at 27, 93 S.Ct. at 2616].[3] The regulated materials need not be defined with "ultimate, god-like precision." *Id.* at 28, 93 S.Ct. at 2617.

---

[3] Indeed, this court has already rejected an unfair notice challenge to the South Carolina obscenity statutes. *See Olson v. Leeke,* 744 F.2d 1061 (4th Cir.1984), *cert. denied,* [471] U.S. [1053, 105 S.Ct. 2112, 85 L.Ed.2d 477].

*Vernon Beigay, Inc.,* 790 F.2d at 1093 and n. 3. Thus, the formulation in *Olson* is clearly the law in this circuit.

Indeed, Eckstein has cited no case law indicating support for her position; rather, she claims that this and other courts' reasoning regarding the issue has been "wooden" or unpersuasive. Eckstein does point to the Supreme Court's decision in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), in which the Court considered a civil procedure used by the state of Georgia in regulating obscene films. The statute at issue in the case was a criminal one; however, "Georgia case law" permitted "the exhibition of materials found to be 'obscene' as defined by that statute [to] be enjoined in a civil proceeding." *Paris Adult Theatre I,* 413 U.S. at 51 n. 1, 93 S.Ct. at 2632 n. 1. Although the Supreme Court ultimately remanded the case back to the state court for reconsideration in the light of the newly clarified definition of obscenity then very recently announced in *Miller,* it commended the state's procedure as providing "an exhibitor or purveyor of materials the best possible notice, prior to any criminal indictments, as to whether the materials are unprotected by the First Amendment and subject to state regulation." *Id.* at 55, 93 S.Ct. at 2634. The Court expressly noted that "[t]his procedure would have even more merit if the exhibitor or purveyor could also test the issue of obscenity in a similar civil action, prior to any exposure to criminal penalty." *Id.* at 55 n. 4, 93 S.Ct. at 2634 n. 4. However, while in *Paris* the Supreme Court stated that such a civil proceeding in fact provides "the best possible notice," *id.* at 55, 93 S.Ct. at 2634, neither the Supreme Court nor this circuit nor any other court has ever asserted that such a procedure is constitutionally required. In fact, as we noted earlier, this Court in *Olson* has indicated to the exact opposite.

In any event, appellant's contention that she is entitled to some type of pre-indictment civil proceeding before being subjected to the risk of criminal prosecution hardly accords with the essence of our common-law system. Thus, in *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962), Chief Justice Warren observed:

Historically [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive prosecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or

other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

Of course, protections to a defendant extend beyond the indictment. Thus,

> "[i]t is the duty of the Government to establish ... guilt beyond a reasonable doubt. This notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process.'" *In Re Winship*, 397 U.S. 358, 362, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (Brennan, J.) (quoting *Leland v. Oregon*, 343 U.S. 790, 802–03, 72 S.Ct. 1002, 1009–10, 96 L.Ed. 1302 (1952) (Frankfurter, J., dissenting). " 'These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.'" *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 174, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) (Rutledge, J.)). Further, "[c]riminal sanctions may be applied only after a determination of obscenity has been made in a criminal trial hedged about with the procedural safeguards of the criminal process." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).

In addition, in this case, the type of civil proceeding present in *Paris* would not be too helpful. Magazines, unlike films or books, vary from issue to issue. As the district court below asserted, it is entirely possible that one issue of a magazine may reflect obscenity, while another issue may be protected. *See Eckstein*, 803 F.Supp. at 1119; *see also Council for Periodical Distrib. Ass'n v. Evans*, 642 F.Supp. 552, 565 (M.D.Ala. 1986), *modified*, 827 F.2d 1483 (11th Cir. 1987); *cf. Hamling*, 418 U.S. at 126–27, 94 S.Ct. at 2912 ("[a] judicial determination that particular materials are not obscene does not necessarily make them relevant to the determination of the obscenity of other materials.").

We are not confronted here with a case where the government's conduct rises to the level of a prior restraint. The U.S. Attorney's letter to appellant did not forbid appellant from continuing to sell sexually explicit publications and did not identify by name any particular item as subject to prosecution. The

> deterrence of the sale of obscene materials is a legitimate end of state antiobscenity laws, and our cases have long recognized the practical reality that "any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene."

*Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 60, 109 S.Ct. 916, 926, 103 L.Ed.2d 34 (1989) (quoting *Smith v. California*, 361 U.S. 147, 154–55, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1959)[7]; *cf. Bantam Books*, 372 U.S. at 71, 83 S.Ct. at 640 (1963) ("we do not mean to suggest that private consultation between law enforcement officers and distributors prior to the institution of a judicial proceeding can never be constitutionally permissible"). In fact, if the government had done what appellant sought, and provided appellant with a specific list of obscene items, such action may have constituted impermissible government censorship. *Cf. Bantam Books*, 372 U.S. at 67, 71, 83 S.Ct. at 637, 640 (designation by a state commission of certain items as obscene, without notice, hearing or judicial review, was impermissible, even though only informal sanctions were imposed).

Appellant has not alleged, and we can discern no evidence of, bad faith or harassment on the part of the government. Appellant contends only that she fears the burden of defending herself against prospective criminal prosecution. That fear, in itself, on the part of Eckstein does not necessarily evince an impermissible governmental motive. *See Fort Wayne Books*, 489 U.S. at 60, 109 S.Ct. at 926; *see also Penthouse Int'l, Ltd. v. Webb*, 594 F.Supp. 1186, 1194 (N.D.Ga.1984). "There is no showing here that [Cullen] undertook anything other than to carry out his stated purpose, and official obligation, of en-

---

7. That proposition is equally applicable to federal anti-obscenity laws.

forcing the [federal] criminal statutes." *Webb,* 594 F.Supp. at 1194.

■ Appellant also complains of a possible chilling effect upon the exercise of constitutionally protected speech by booksellers who will refuse to carry materials of a sexual nature for fear of being forced to defend against costly prosecution. While we do not doubt that appellant would not have discontinued such a lucrative portion of her inventory were it not for her fear of prosecution, she undeniably possesses no right to distribute obscene materials. Appellant's contention that she has been forced to remove from her shelves potentially non-obscene materials as a result of her "incorrect understanding" of the law is not "constitutionally cognizable." *Polykoff v. Collins,* 816 F.2d 1326, 1340 (9th Cir.1987). While laws such as the one at issue indeed may chill the expression of protected speech in certain instances, such secondary effects seem unavoidable if the federal anti-obscenity statute is to be enforced.[8]

Finally, appellant contends that the federal, rather than state, nature of the action at issue should bear upon the validity of the statute. Specifically, appellant contends that a federal grand or petit jury, which would be drawn from a much larger geographical area than would a state grand or petit jury, might be more conservative and less tolerant of the kinds of materials sold by appellant at her urban bookstores. That factor, appellant argues, prevents appellant from accurately assessing the community standards which are vital to an obscenity determination. Appellant cites no case authority for the proposition that the federal government cannot prohibit merchants from distributing obscene materials. In fact, the case law in the area does not distinguish in this way between federal and state prosecutions. *See, e.g.,*

*Hamling,* 418 U.S. at 104, 94 S.Ct. at 2900–2901:

> *Miller* rejected the view that the First and Fourteenth Amendments require that the proscription of obscenity be based on uniform nationwide standards of what is obscene, describing such standards as "hypothetical and unascertainable," 413 U.S. at 31, 93 S.Ct. at 2619. But in so doing the Court did not require as a constitutional matter the substitution of some smaller geographical area into the same sort of formula; the test was stated in terms of the understanding of "the average person, applying contemporary community standards." *Id.* 413 U.S. at 24, 93 S.Ct. at 2615.
>
> .   .   .   .   .
>
> A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination.

*Hamling* itself involved a federal prosecution and a federal grand jury, as have other cases. *Id.* 418 U.S. at 91, 94 S.Ct. at 2894–95; *see also, e.g., United States v. Easley,* 927 F.2d 1442, 1444 (8th Cir.1991), *cert. denied, Hunter v. United States,* —— U.S. ——, 112 S.Ct. 199, 116 L.Ed.2d 158 (1991) (federal prosecution for violation of 18 U.S.C. § 1461).

## IV.

Appellant and other booksellers similarly situated do sometimes assume the uncertain prospect and risks of prosecution when electing to traffic in sexually oriented materials. The resulting chill upon the exercise of First Amendment rights and/or the added expense imposed upon the circulation of such materials as a result of booksellers' fears is the price society has chosen to pay for regulating

---

8. Appellant raises something of a red herring with her reference to the books *Rabbit is Rich,* by John Updike, and *Sex,* by Madonna. Appellant asserts that, if this Court reaches a result contrary to that preferred by appellant, she will be unable to sell the above books, both of which have been national bestsellers, at her store for fear of prosecution. Without assessing in any way the likelihood of a jury finding that one or more of such books is obscene, we note that the section of the search warrant executed by the FBI agents on April 24, 1992, which encompassed those books was declared "impermissibly overbroad" by the court below. *Eckstein,* 803 F.Supp. at 1115. The portion of the warrant held valid by Judge Ellis dealt only with magazines of the type mentioned *supra* at note 3. In any event, even if the above were not true, appellant still would be faced with the same result—any subjective chill experienced by appellant does not suffice to invalidate the statute.

obscenity. In effect, the Supreme Court has concluded that the advisability of that choice is for the legislature, not the judiciary. This Circuit Court, as was Judge Ellis below, is bound by that approach and determination. Accordingly, the judgment of the district court is hereby

*AFFIRMED.*